UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-10813-GAO

GULF OIL LIMITED PARTNERSHIP,
Plaintiff,

v.

PETROLEUM MARKETING GROUP, INC.,
and BP PRODUCTS NORTH AMERICA INC.,
Defendants.

OPINION AND ORDER
March 30, 2018

O'TOOLE, D.J.

Gulf Oil Limited Partnership ("Gulf") alleges claims against BP Products North America ("BP") for tortious interference with contract and advantageous business relations or business expectancy (Count VI); violation of Massachusetts General Laws Chapter 93A, § 11 (Count VII); conspiracy under Virginia Code § 18.2-499, *et seq.* (Count VIII); and civil conspiracy (Count IX). Now pending before the Court is BP's motion under Federal Rule of Civil Procedure 12(b)(2) to dismiss the claims for lack of personal jurisdiction.

**I.     Factual Background**

Gulf, a Delaware limited partnership with a principal place of business in Massachusetts, is a wholesaler of refined petroleum products, including diesel fuel and gasoline. Gulf utilizes a distribution network that supplies fuel products through seventeen terminals and more than 1,800 Gulf-branded gas and service stations. BP is incorporated in Maryland and has a principal place of business in Illinois. It operates BP gas stations in various States, including Massachusetts.

In 2016, co-defendant Petroleum Marketing Group ("PMG") acquired from Gulf 223 northeast and mid-Atlantic dealer-operated convenience stores and gas stations. PMG also entered into a Distributor Agreement with Gulf, pursuant to which PMG's newly acquired gas stations would continue to be branded with Gulf logos and Gulf would supply their fuel. The agreement detailed the parties' respective rights and responsibilities at length. Gulf and PMG are also parties to a number of other more or less related agreements that are apparently not germane to the present issues.

In late 2016 and early 2017, Gulf became concerned that PMG might be planning to lease to BP some of the stations it had acquired from Gulf. The Oil Express, an industry periodical, reported in February 2017 that BP was engaged in conversations with PMG to acquire some of the latter's Gulf-branded stations. The complaint alleges that the Oil Express article was circulated throughout the country, including in Massachusetts. Gulf argues in its brief that BP "triggered multiple false rumors to circulate that BP [was] buying some of Gulf's most valuable stations and Gulf [was] exiting the market," (Gulf's Resp. in Opp'n to BP's Mot. to Dismiss, 2 (dkt. no. 41)), but there is no similar allegation in the complaint itself, nor are there any supporting factual allegations other than the quoted conclusory assertion set forth in the brief.

By letter dated April 21, 2017, PMG advised Gulf that it had entered into an agreement with BP pursuant to which PMG would lease seventy-six Gulf-branded sites to BP and that BP intended to use them to sell BP branded fuels. Gulf became concerned both with the potential loss of revenue under the Distributor Agreement from the conversion of Gulf stations to BP stations and with the adverse public relations effect of what might be seen as a substantial withdrawal from the retail market by Gulf. The sites at issue are located exclusively in New York and New Jersey.

The complaint alleges that BP, which had some knowledge of the ongoing business relationship between Gulf and PMG,[1] induced PMG to breach the Distributor Agreement and wrongfully colluded with PMG to convert stations from Gulf to BP stations. Gulf claims that it is losing millions of dollars as a result of BP's tortious interference.

## II.     Standard of Review

When a court's power to exercise personal jurisdiction over a defendant is challenged, the plaintiff bears the burden of establishing that the exercise of such jurisdiction is proper. A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (citing Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)). Under the commonly used "prima facie" approach, a court considers "whether [Gulf] has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." Id. (quoting Phillips, 530 F.3d at 26). A court "must accept [Gulf's] properly documented evidentiary proffers as true and construe them in the light most favorable to [its] jurisdictional claim." Id. (citing Phillips, 530 F.3d at 26). However, the plaintiff is only entitled to credit for assertions that are supported by specific evidence, not for conclusory or unsupported allegations from its pleadings. Id. (quoting Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006)). Allegations in legal memoranda alone are "insufficient . . . to establish jurisdictional facts." Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001).

## III.    Discussion

The Due Process Clause of the Fourteenth Amendment to the United States Constitution limits the power of a State to subject nonresidents to binding adjudications by its courts. Bristol-Myers Squibb Co. v. Super. Ct. of Cal., 137 S. Ct. 1773, 1779 (2017); J. McIntyre Mach., Ltd. v.

---

[1] Gulf states that "BP may not have known the exact terms of the entire contract," but generally knew that Gulf and PMG had an ongoing business relationship. (Gulf's Resp. in Opp'n to BP's Mot. to Dismiss, 13.)

3

Nicastro, 564 U.S. 873, 879-80 (2011). However, a State may subject a nonresident to the judgments of its courts under circumstances where the nonresident's voluntary contacts with the State are such that the exercise of binding judicial power over a particular controversy would "not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). In particular,

> [w]here a defendant "purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, [Hanson v. Denckla, 357 U.S. 235, 253 (1958)], it submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State.

J. McIntyre, 564 U.S. at 881.

In deciding whether a defendant may properly be subjected to personal jurisdiction in a given forum, a court must consider "a variety of interests," including "'the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice.'" Bristol-Myers Squibb, 137 S. Ct. at 1780 (quoting Kulko v. Super. Ct. of Cal., 436 U.S. 84, 92 (1978)). But the court's "'primary concern' is 'the burden on the defendant,'" id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)), not only because there may be practical problems resulting from forcing a defendant to litigate in an inconvenient forum, but because the question of jurisdiction also implicates the "territorial limitations on the power of the respective States." Id. (citing Hanson, 357 U.S. at 251). Each State has a sovereign interest in the power to try cases in its own courts, but "[t]he sovereignty of each State . . . implie[s] a limitation on the sovereignty of all its sister States." Id. at 1780 (quoting World-Wide Volkswagen, 444 U.S. at 293).

> Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument

4

of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

World-Wide Volkswagen, 444 U.S. at 294. The liberty protected by the Due Process Clause includes the "right to be subject only to lawful power." J. McIntyre, 564 U.S. at 884.

This Court's exercise of personal jurisdiction over a defendant is proper only if the requirements of both the Massachusetts long-arm statute, Massachusetts General Laws Chapter 223A, Section 3, and the Due Process Clause are satisfied. A Corp., 812 F.3d at 58.

Gulf's complaint adequately alleges a statutory basis for jurisdiction at least under section 3(d) of the long-arm statute. The question here is whether the exercise of personal jurisdiction over BP for the claims alleged in the complaint would be proper under the Due Process Clause.

### A.    General Jurisdiction

The doctrine of general jurisdiction, sometimes called "all-purpose jurisdiction," authorizes a court to adjudicate any claim against a defendant, regardless of where the events giving rise to the claim had occurred. Bristol-Myers Squibb, 137 S. Ct. at 1780. This doctrine has been applied to establish jurisdiction over foreign corporations—that is, those not incorporated under the forum's law—"when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tire Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Int'l Shoe, 326 U.S. at 317). A corporation that is sufficiently "at home" in the forum is treated as a resident of that State and thus subject to the general jurisdiction of the State's courts.

BP has a sizable economic presence in Massachusetts, and formerly a plausible case might have been made for exercising general jurisdiction over it. No longer. The Supreme Court has held and reiterated that a corporate defendant is generally "at home" only in its State of incorporation and the State where it maintains its principal place of business. BNSF Ry. Co. v. Tyrrell, 137 S.

Ct. 1549, 1558 (2016) (quoting <u>Daimler AG v. Bauman</u>, 134 S. Ct. 746, 760 (2014)). The Court has left open the possibility that there may be other "exceptional case[s]" where a corporation's operations in a forum are "so substantial and of such a nature as to render the corporation at home in that State," such as when a company incorporated and normally based elsewhere has temporarily relocated its general operations to the forum State. <u>Id.</u> (citing <u>Perkins v. Benguet Consol. Mining Co.</u>, 342 U.S. 437 (1952)).[2]

BP is incorporated in Maryland. It maintains its principal place of business in Illinois. Even though it does a substantial amount of business in Massachusetts, as it presumably does in other States, that fact does not distinguish it from any other company that does business on a nationwide scale. There are no particular facts in the record to support a conclusion that BP's business operations are "so substantial and of such a nature" that it is "at home" in Massachusetts, so to warrant characterizing this as the sort of "exceptional case" the Supreme Court hypothesized. On the contrary, BP's presence in Massachusetts is rather like BNSF's presence in Montana, which the Court found was not sufficient to support general jurisdiction. <u>See</u> <u>BNSF</u>, 137 S. Ct. at 1554–55. Because the record in this case does not permit a conclusion that a hypothetical exception should be made, personal jurisdiction over BP may not be justified under the doctrine of general, all-purpose jurisdiction.

B. <u>Specific Jurisdiction</u>

Specific jurisdiction, sometimes called "case-linked jurisdiction," may be established where the plaintiff's specific claims arise out of, or relate to, the defendant's contacts with the forum. <u>Bristol-Myers Squibb</u>, 137 S. Ct. at 1780. Gulf's argument for specific jurisdiction fails

---

[2] The fact that the Court illustrated its reservation of a possible exception with an unusual case from 1952 suggests that the Court's recognition of an exception is likely to be rare.

because its claims against BP in this suit do not arise from, nor are they related to, BP's commercial activities in Massachusetts.

Gulf's claims against BP are, in summary, that it tortuously conspired with PMG to deprive Gulf of the benefit of its Distributor Agreement with PMG by causing several dozen Gulf-branded stations to become BP-branded stations. All of the stations at issue are located in the New York-New Jersey area. None are located in Massachusetts. BP does sell gas through stations in Massachusetts, but that economic activity is wholly unrelated to Gulf's claims in this suit.

Gulf argues that BP's necessary claim-related Massachusetts contacts arise because Gulf has suffered here the effects of BP's wrongful conduct committed elsewhere. It relies on two cases: Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 10 (1st Cir. 2009), and Optos, Inc. v. Topcon Med. Sys., Inc., 777 F. Supp. 2d 217 (D. Mass. 2011). In Astro-Med, the plaintiff alleged that defendant corporation's wrongful actions in Florida and California caused harm to it in Rhode Island. The court held that conduct elsewhere that caused an in-forum injury to the plaintiff was sufficient to establish the necessary relatedness to justify the exercise of specific jurisdiction. 591 F.3d at 10 ("Nihon Kohden's conduct in Florida and California was a cause of the breach of contract—the actual injury—that occurred in Rhode Island."). In Optos, the court, relying on Astro-Med, similarly held that the fact that the defendant corporation's conduct elsewhere caused the breach of contract injury in Massachusetts supported a conclusion that the claim arose from the defendant's contact with Massachusetts. 777 F. Supp. 2d at 233.

It certainly is true that claims arising from a defendant's out-of-state tortious conduct that causes injury within the forum can in certain circumstances provide a basis for statutory jurisdiction over that defendant, provided additionally, as pertains to a Massachusetts forum, that

7

the defendant has also derived substantial revenue from in-State activity.[3] Mass. Gen. Laws, ch. 223A, § 3(d). The constitutional question is separate from the statutory one, however, and for constitutional purposes, what matters most is the *defendant's* relation to the forum, not the place of the plaintiff's injury.

The Supreme Court has recently emphasized that the "primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum State." Bristol-Myers Squibb, 137 S.Ct. at 1799; see also Walden v. Fiore, 134 S. Ct. 1115, 1121–23 (2014); A Corp., 812 F.3d at 60. Whether Astro-Med would be decided the same way after Walden and Bristol-Myers Squibb is open to serious question.[4] (The same applies for Optos, which relied on Astro-Med.) In Walden the Supreme Court flatly rejected the proposition that a Georgia defendant could be sued in Nevada simply because it was in Nevada that the plaintiffs experienced the effects of the defendant's wrongful conduct.

Astro-Med is unstable precedent in its own right. The case does not provide clear guidance because, while the court was unanimous as to the judgment, each of the three panel judges wrote separately, their separate views demonstrating that they were not in full agreement as to the proper jurisdictional analysis. Judge Woodcock, announcing the opinion of the court, noted that the defendant's "conduct in Florida and California was a cause of the breach of contract—the actual injury—that occurred in Rhode Island" and "[t]hat in-forum injury was clearly related to Astro-

---

[3] It should be noted that it is not just the in-forum injury that supports statutory jurisdiction, but the necessary additional fact of the defendant's derivation of substantial revenue from economic action within the State.

[4] See A Corp., 812 F.3d at 60; Guaranteed Rate, Inc. v. Conn, 264 F. Supp. 3d 909, 919 (N.D. Ill. 2017) ("Walden calls into question the First Circuit's expansive application of Calder in Astro-Med."); see also Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc., 751 F.3d 796, 802 (7th Cir. 2014) ("[A]fter Walden there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.' Walden, 134 S. Ct. at 1122. Any decision that implies otherwise can no longer be considered authoritative.").

Med's tortious interference claim, satisfying the first prong of the minimum contacts analysis." Astro-Med, 591 F.3d at 10. Concurring, Judge Howard observed that the acts that formed the bases of the plaintiff's tortious interference and breach of contract claims were done by the defendants outside Rhode Island, and he recognized that focusing only on where Astro-Med felt the effects of the wrongful conduct was to apply "a test that we have said has no place in assessing relatedness" for jurisdictional purposes. Id. at 22 (Howard, J., Concurring) (citing United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 623 (1st Cir. 2001)). Nonetheless, he concluded that because "the victim of a business tort often will suffer an economic injury, without which there [would have] been no tort, in a forum that the defendant has not contacted in the classic sense," it was permissible to "[c]onstru[e] the relatedness requirement in such cases slightly more generously." Id. He concluded that subjecting the defendant to jurisdiction in the circumstances "can hardly be characterized as unfair." Id. He thus apparently applied a kind of "reasonableness" lens to the "relatedness" test. Judge Lipez, who had dissented in Swiss American Bank from the court's decision limiting consideration of the in-forum "effects" of the defendant's out-of-state conduct to the "purposeful availment" aspect of the specific jurisdiction inquiry, argued, contrary to the decision in Swiss American Bank, that the "effects test" was just as appropriate for analysis of the relatedness aspect. Id. at 23 (Lipez, J., Concurring). He therefore agreed that it was proper for the Rhode Island court to exercise jurisdiction over the nonresident defendant.

The so-called "effects test" all three judges relied on in Astro-Med derives from the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984). In Calder, the Court held that the exercise of personal jurisdiction by the California courts over Florida residents was proper where the defendants had circulated a libelous article about the plaintiff in California. Id. at 789 ("Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their

9

Florida conduct in California.") (citing World-Wide Volkswagen, 444 U.S. at 297–98). Perhaps not surprisingly, some plaintiffs (and courts) understood Calder to authorize the exercise of personal jurisdiction by the plaintiff's home forum if, without more, an injury-causing effect of the defendant's out-of-state conduct had been experienced by the plaintiff within the forum State, at least in the case of intentional torts. See Astro-Med, 591 F.3d at 10. The Supreme Court's apparently unqualified summary of its holding in Calder no doubt contributed to such an understanding of the case: "We hold that jurisdiction over petitioners in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California." Calder, 465 U.S. at 791.

But it turns out the understanding was a misunderstanding.[5] In Walden, the Court explained:

> The crux of Calder was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of the nature of the libel tort. . . . [B]ecause publication to third persons is a necessary element of libel, . . . the defendants' intentional tort actually occurred *in* California. . . . In this way, the "effects" caused by the defendants' article—i.e., the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California*, not just to a plaintiff who lived there.

134 S. Ct. at 1123-24 (emphasis in original).

That is not quite the subsequent repair it might at first blush seem to be. The same day the Court decided Calder, it also decided Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984), another personal jurisdiction case involving a libel suit.[6] In Keeton, the Court held that a nonresident publisher that regularly sold a substantial number of magazines in New Hampshire could be sued for libel there, even though the plaintiff herself was not a resident of the State. 465

---

[5] Cf. T.S. Eliot, The Love Song of J. Alfred Prufrock (1915) ("That is not what I meant at all;/ That is not it, at all").
[6] Justice Rehnquist was the author of both opinions.

U.S. 770, 780-81. "In judging minimum contacts," it said (repeating what it had also said in Calder, 465 U.S. at 788), "a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" Id. at 775 (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). Noting that "[t]he tort of libel is generally held to occur wherever the offending material is circulated," id. at 777, the Court held that a defendant that "continuously and deliberately exploited the New Hampshire market . . . must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine." Id. at 781. As in Calder, the Court focused on the relationship of the defendant to the forum State.[7] The defendant itself had sold and distributed its magazines containing the alleged libel in New Hampshire, establishing the necessary "minimum contacts" with the State to support the exercise of jurisdiction. Int'l Shoe, 326 U.S. at 316.[8]

Considered together, Calder and Keeton teach that what is critical to the question of personal jurisdiction is the defendant's own connection to the forum, in each of these cases by reason of its publication there of the alleged libel, regardless of whether the plaintiff did (in Calder) or did not (in Keeton) herself suffer the effects of the libel there. So, even *if* the Astro-Med decision properly considered an "effects" test to apply to the relatedness inquiry, as opposed to limiting its consideration of such a test to the purposeful availment inquiry, see Swiss Am. Bank, 274 F.3d at 624, the test it purported to apply, if it existed at all, has not survived Walden.

---

[7] The Court also noted: "The plaintiff's residence is not, of course, completely irrelevant to the jurisdictional inquiry. . . . Plaintiff's residence may be the focus of the activities of the defendant out of which the suit arises." Id. at 780 (citing Calder, 465 U.S. at 787–88).

[8] In an apparent attempt to grab some purchase from this fact, in the present case Gulf points to an industry publication and "rumors" that were circulated in Massachusetts. It is not clear how the rumors were themselves the cause of actionable harm to Gulf apart from the subsequent actual transfer of station locations to BP. In any event, there is nothing in the record that supports the claim that BP was responsible for the circulation of either the industry publication or the rumors. Additionally, as noted above, Gulf made the assertion in its brief and not in the complaint. Even if it were more specific, it could be disregarded.

Furthermore, the First Circuit has apparently implicitly abandoned the Astro-Med formulation(s). Without expressly citing Walden, the court has, consistently with Walden and inconsistently with Astro-Med, re-emphasized that for a plaintiff's claims to be "related to" a defendant's in-forum contacts, something more would be necessary than the bare fact that the plaintiff "felt the effects" of the defendant's out-of-state conduct at its home within the forum. See A Corp., 812 F.3d at 60 (citing Sawtelle v. Farrell, 70 F.3d 1381, 1390–91(1st Cir. 1995), for the proposition that "in-forum effects of non-forum activity, standing alone, were insufficient to support personal jurisdiction").

To sustain jurisdiction over BP specific to the claims made in the suit, Gulf must show that those claims arise out of, or are related to, BP's contacts with Massachusetts. It has not made a prima facie showing of that proposition.

### C. Jurisdictional Discovery

In a footnote, Gulf requests alternatively that it be permitted to engage in jurisdictional discovery. (Gulf's Resp. Opp'n, 12 n. 4.) However, its request does not identify or proffer what factual issues it would pursue if discovery were allowed and how any discovered information would support specific jurisdiction. It is the plaintiff's duty "to present facts to the court which show why jurisdiction would be found if discovery were permitted." Me. Med. Ctr. V. United States, 675 F.3d 110, 119 (1st Cir. 2012). Although this Court has wide discretion in deciding whether jurisdictional discovery is appropriate and "the threshold showing that a plaintiff must present to the district court to merit limited discovery is relatively low," Blair v. City of Worcester, 522 F.3d 105, 111 (1st Cir. 2008), Gulf did not identify any facts that it might find to support specific jurisdiction in this forum. Therefore, Gulf's request is DENIED.

## IV. Conclusion

BP's Rule 12(b)(2) motion (dkt. no. 35) is GRANTED, and Gulf's claims against BP are DISMISSED for lack of personal jurisdiction.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge
